UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS    FILED
IN CLERKS OFFICE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 04-10249-PBS |
| | ) | 2005 MAR 14  P 4: 5 ! |
| v. | ) | VIOLATIONS: |
| | ) | U.S. DISTRICT COURT |
| STEVEN NOTHMANN | ) | 26 U.S.C. § 7212 DISTRICT OF MASS. |
| | ) | Corruptly Obstruct and Impede |
| | ) | the Due Administration of the Internal |
| | ) | Revenue Service |
| | ) | |
| | ) | 42 U.S.C. § 408 |
| | ) | Use of a False Social Security |
| | ) | Number |

MOTION TO DEPART FROM A SENTENCE GUIDELINE RANGE
CALCULATED PURSUANT TO U.S.S.G. SECTIONS 2T 4.1(F) AND 3C1.1,
AND IMPOSE A SENTENCE TO HOME CONFINEMENT AS APPROPRIATE BASED
UPON (1) THE DEFENDANT'S SERIOUSLY INFIRM CONDITION AND (2) THE
PROVISIONS OF U.S.S.G. § 5G1, AND 18 U.S.C. 3553(a) 1 AND 2, AND (b)

Now comes the defendant Steven Nothmann, by and thru undersigned counsel, and respectfully moves this Court depart from a U.S.S.G. Sentencing Guideline range of 18 to 24 months contemplated by the parties in (1) the defendant's June 2, 2004 Plea Agreement and (2) at the time acceptance of the defendant's guilty pleas on 10/1/04 and impose a sentence to home confinement as appropriate based upon (1) the defendant's extraordinary physical impairments and seriously infirm physical condition and (2) the provisions of U.S.S.G. § 5G1 and 18 U.S.C. 3553 (a) 1 and 2, and (b).

As calculated and agreed to by the parties, the tax loss of $197,000.00 results in an offense level of 16 pursuant to 2T1.1 and 2T 4.1 § (F). A two level enhancement was calculated under U.S.S.G. § 3C1.1 based upon the defendant's willful attempt to obstruct or impede the administration of justice. Thus the parties calculated to a combined offense level of 18, through the specific offense level was not stated in the Plea Agreement (Plea Agreement, Par. 3, P. 2). Based upon the defendant's signing the Plea Agreement and timely tendering his guilty pleas, the government agreed to recommend a three offense level reduction based upon acceptance of responsibility (Plea Agreement, Par. 3, P. 2). Thus the offense level contemplated by the parties in the Plea Agreement was offense level 18, less three levels, to wit, offense level 15. Offense

level 15 provides for a sentencing range of 18 to 24 months for a person in the defendant's criminal history category, i.e. category 1, where there is no criminal record.

The defendant recognizes this Court is no longer bound to confine its sentence to above described sentencing range, based upon the recent U.S. Supreme Court cases of Blakely v Washington, 542 U.S.____ , 124 Sup. Ct. 2531 (2005) and United States v. Booker, 543 U.S._____ , 125 Sup. Ct. 738 (2005) holding the guidelines non-mandatory  The defendant also recognizes this Court's obligation under 18 U.S.C. 3553 (a) (1) and (2) and (b).

A departure from a sentence of confinement is appropriate in this case based upon the defendant's physical infirmity as provided for in U.S.S.G. § 5H 1.4.

As the combined medical assessments of the defendant's major treating physicians make clear (Exhibit A), the defendant suffers from a combination of serious life and limb threatening medical illnesses, i.e. congestive heart failure, heart block with pacemaker, hypertension, major kidney failure, severe diabetes, advanced sensation and motor neuropathy of his lower limbs, Reynaud's Syndrome, sleep apnea, leg ulcers, sarcordosis, and depression.  These conditions in combination make his hold on life tenuous.  They require an extraordinarily complicated level of care regimen with frequent and immediate hospitalization readily available , daily consultation with hospital medical staff to monitor and adjust medication, and a complicated home care regimen of self treatment and monitoring of self medication, orally and by injection as well as use of a sleep apnea machine.  Failure at any one of these interrelated therapies would put the defendant at grave risk to his life (heart) (kidneys) and/or amputation (diabetic leg ulcers).  In a penal setting, the combination of his conditions would result in an irreversible risk to his life (Dr. Aronson), or premature death (Dr. Tsao).

The medical records of the defendant's treatment at the Beth Israel Deaconess Hospital and Joslin Diabetes Clinic support the above cited medical assessments (Exhibits B and C).  Also attached is a description by the defendant of (1) the daily medications he is required to take and their monthly pharmacy cost (Exhibit D), and (2) the methodology involved in his self-medication and his severely restricted diet (Exhibit E), his other home care responsibilities (Exhibit F) and a sample schedule of his ongoing hospital appointments (Exhibit G).

Noteworthy in this connection is the fact that on June 10, 2002, the defendant was operated on to spread his spine and relieve bone pressure on his spinal nerve. The screws to hold some bone in place failed to hold. The defendant was re-operated upon on June 17, 2003 to remove the screws. During that operation the defendant's esophagus was cut, allowing sepsis throughout his body. The subsequent discovery resulted in the defendant being in a coma on life support for seven weeks. His family was summoned several times in anticipation that he would not survive. He spent another seven weeks in rehab attempting to learn to walk again. The sepsis resulted in catastrophic damage to his immune system. He has no immune resistance and is thus a poor candidate for survival in a penal system.

An additional consideration in this connection is the cost of defendant's medical care. The Natrecor filtration now twice weekly costs about $3,150.00 a month. The Aranesep costs about $2,400.00 a month. Beth Israel Hospital's charges for the defendant's care from 4/10/2003 to 3/8/2005 (Exhibit H) amounted to approximately $247,144.60 (Exhibit H).

While the defendant recognizes that the U.S. Bureau of Prisons does provide medical are for its inmates, he respectfully suggests that his medical needs are at a level so as to be unsustainable in a penal setting. For example, in December, 2004 the defendant was hospitalized in an emergency basis while being routinely examined. Fluid had built up in his system to weaken his heart. Natrecor was ineffective. An experimental filtration device was used over a couple of days to filter his whole body blood. Thirteen liters of fluid were filtered from his blood. Only several centers in the country have such a filtration device available (Letters Dr. Aronson, Dr. Tsao). Given the defendant's present medical condition and his extremely tenuous prognosis a sentence to a period of home confinement is appropriate. Home confinement is as efficient as and less costly than imprisonment for this defendant.

Such a judgment was recently reached in the United States District Court in Rhode Island. (See In Re special Proceeding December 9, 2004.) There the District Court Judge considered the delicate balance of the defendant's health as a recovering heart transplant recipient to be at high risk for infection and thus imposed a period of home confinement in lieu of imprisonment where, in that case, the defendant was able to lead a far more active life than the defendant here. (Exhibit I Transcript of sentencing hearing, In Re special Proceeding, CA. No. 01-47, pp. 22-30) (See also U.S. v Crumbliss 58 Fed. Appx. 577   (4th Cir 2003))

Other aspects of the defendant's circumstances weigh in the balance for home confinement as appropriate. Prior to his involvement in these charges, the defendant had no criminal record. He was a successful stock broker. His tax violations, though over a period of time, were in the nature of an aberration from an otherwise blameless life. Since his employment at Morgan Stanley was terminated in November 2000 as a result of a portion of the current charges, the defendant has not had any meaningful employment. His effort at self employment by at home brokering was gradually derailed by spinal problems and terminated in June, 2002 with his failed surgery. Medically, he has been since then and will forever be unable to work. At this point he has a very limited existence consisting of his efforts at home and hospital medical care. To a significant degree, he bears this burden alone, as is evident from the Pre-Sentence Report and the letter of Dr. Tsao. He is not capable of travel or even significant ambulation on his own. He has significant family worries and responsibilities he is essentially unable to meet. His mother, Gladys Nothmann, a woman in her eighties, is currently, and for the last two weeks has been, hospitalized with internal bleeding. He is not able to assist her in any meaningful way. His son, a young man of promise, is adrift, unreachable so far as moving to capitalize on that promise. His marriage is significantly strained. His quality of life is at a level just above bare existence.

With respect to his tax returns, the defendant has filed his 2001, 2002 and 2003 Federal and State income tax returns. He will file his 1998, 1999 and 2000 Federal and State tax returns this week. There is no likelihood he will be involved in any future tax code violations.

Given the defendant's extraordinary physical impairments and seriously infirm physical condition, his prior history, and his current circumstances, a sentence to home confinement will not be perceived as a failure of deterrence.

Based upon the foregoing, it is respectfully requested that this Court impose as appropriate a sentence to home confinement of a length and under conditions satisfactory to the Court.

Respectfully submitted,

Edward J. Lee

4

## Certificate of Service

I, Edward J. Lee, counsel for the defendant, hereby certify I have this day served a copy of the within Motion upon A.U.S.A. Seth Berman, Counsel for the United States, by delivering a copy to the office of the United States Attorney, Room 9200, United States Courthouse, 1 Courthouse Way, Boston, MA 02210.

March 14, 2005

_____
Edward J. Lee